IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                              )<br>                 Plaintiff / Respondent,    )<br>                                                              )<br>        v.                                                  )<br>                                                              )<br> VIRGIL J. WINSTON,                          )<br>                                                              )<br>                 Defendant / Petitioner.     )<br>                                                              )<br> _____)  | Case No. 08-2397-JWL<br>Case No. 06-20005-01-JWL |

## MEMORANDUM AND ORDER

Virgil Winston, acting pro se, has filed a petition to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. # 51). For the reasons set forth herein, the petition is **denied in part and retained under advisement in part**. The court denies the petition with respect to Mr. Winston's claims relating to expert testimony by a Government witness at trial and his claims relating to the Presentence Investigation Report (Grounds 2 through 6 in the petition). The court retains under advisement, pending an evidentiary hearing, Mr. Winston's claim that he was denied the effective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution, when his trial counsel failed to file a motion to suppress firearms and ammunition found at Mr. Winston's home (Ground 1 in the petition). The court shall set the hearing and appoint counsel for Mr. Winston on this claim by further orders.

### I. Background

On July 13, 2006, a jury convicted Mr. Winston of one count of being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g). On November 6, 2006, the court sentenced Mr. Winston to a term of imprisonment of 235 months, and judgment was entered to that effect on November 8, 2006. On September 13, 2007, the Tenth Circuit affirmed Mr. Winston's conviction and sentence. *See United States v. Winston*, 247 F. App'x 995 (10th Cir. Sept. 13, 2007). Mr. Winston filed the instant petition on September 2, 2008.

### II. Ineffective Assistance of Counsel – Failure to Move to Suppress

Mr. Winston first claims that his trial counsel should have moved to suppress the firearms and ammunition found in his home on the basis that the evidence was obtained in violation of the Fourth Amendment. Such a claim of ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution is judged under the familiar two-part test enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy that test, the petitioner must show (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceedings would have been different, thereby constituting prejudice to the petitioner. *See id.* at 488-91. In this case, the Government argues that Mr. Winston cannot establish deficient performance by counsel or prejudice because the evidence was

2

not subject to suppression for violation of the Fourth Amendment.

The parties agree that police were called to Mr. Winston's house on the date in question after a fourteen-year-old girl ran from the house to that of a neighbor, who called police. After officers arrived, the girl told them that Mr. Winston had sexually assaulted her in his home. The officers subsequently obtained a search warrant for Mr. Winston's house. At trial, various police officers testified that they found the firearms and ammunition at the house while executing the search warrant.

Mr. Winston has provided evidence, in the form of his sworn affidavit, that on the date in question, prior to the 2:00 p.m. issuance of the search warrant, police entered his home without his consent. Mr. Winston further states that he was restrained in the living room while one officer searched his bedroom without consent; that the searching officer then called to the others, who brought Mr. Winston along to the bedroom; that the officer indicated that he had found the girl's cell phone;[1] and that Mr. Winston was subsequently arrested and removed from the house. With respect to a potential motion to suppress, Mr. Winston argues that police violated the Fourth Amendment when they first entered the house and when they searched his bedroom without his consent and in the absence of exigent circumstances. *See United States v. Reeves*, 524 F.3d 1161, 1165 (10th Cir. 2008) (absent exigent circumstances, an officer may not enter a home without consent

---

[1]The arrest warrant application, dated the following day, indicates that the girl had dialed 911 on her cell phone and that a portion of her encounter in Mr. Winston's home was recorded by 911 dispatch. That cell phone call is not mentioned in the police's search warrant application, however.

to make a warrantless routine arrest, even with probable cause for the arrest) (citing *Payton v. New York*, 445 U.S. 573, 576 (1980)).  Mr. Winston further argues that the illegal search for and discovery of the cell phone allowed police to obtain the subsequent search warrant, and that the firearms and ammunition found in the execution of that warrant were therefore tainted and were subject to suppression as "fruits of the poisonous tree."  *See Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (discussing fruit of the poisonous tree doctrine; test is whether evidence was obtained by exploitation of the illegal search or seizure or by means sufficiently distinguishable to purge the primary taint); *United States v. Olivares-Rangel*, 458 F.3d 1104, 1108 (10th Cir. 2006) (Government can purge taint by "demonstrating that the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct").

In response, the Government first points to Mr. Winston's unopposed motion in limine, which resulted in the exclusion of any evidence of sexual assault by Mr. Winston.  The parties agreed at that time that the officers would simply testify that they were at the house to execute a search warrant when they discovered the firearms and ammunition.  The Government attempts to paint the motion in limine as an admission that the evidence was obtained legally.  The motion in limine does not necessarily undermine Mr. Winston's present claim, however.  Mr. Winston argues that, even if the evidence was discovered during execution of the warrant, the warrant was only obtained as a result of an illegal search and seizure.  Mr. Winston did not concede that the warrant

4

was valid in his motion in limine. Moreover, Mr. Winston is complaining about his counsel's representation; counsel's filing of the motion in limine does not bear on whether counsel should have previously sought to suppress the evidence. Thus, even if Mr. Winston's counsel had admitted that the evidence was lawfully obtained, Mr. Winston would argue that counsel acted unreasonably in making such an admission, in light of Mr. Winston's version of events.[2]

The Government next states that, according to the police report, Mr. Winston invited the police into his house. The Government has not provided the police report or any other evidence to support that assertion, however, which is directly contradicted by Mr. Winston's affidavit. Moreover, such consent to enter would not necessarily mean that Mr. Winston also authorized the subsequent search for the cell phone prior to the issuance of the search warrant. The Government has not pointed to any exigent circumstances that would allow the initial entry or the first search without a warrant.

The Government also argues that the officers' testimony at trial demonstrates that the guns and the cell phone were not seized until after the search warrant was obtained. The officers testified only about the discovery of the firearms and ammunition, however; there has been no evidence presented to this court (other than Mr. Winston's affidavit) concerning the timing of the discovery of the cell phone.

---

[2]The court also agrees with Mr. Winston that his failure to file a motion to suppress in his state court criminal proceedings is irrelevant in the absence of any evidence from Mr. Winston's state court counsel about that decision.

5

Finally, the Government argues that, even if the officers found the cell phone illegally, the officers' search warrant application and the subsequent warrant were not based on that discovery, and that the discovery of the firearms and ammunition while executing that warrant was therefore not tainted. The court rejects this argument because the basis for the search warrant application is not clear from the face of the affidavit supporting the application. In that affidavit, the affiant stated that he had reason to believe that the girl's cell phone was in the house; but in the statement of facts supporting the application, the affiant omitted any reference to knowledge of a cell phone call placed by the girl while in the house. In addition, the affiant stated that the police's investigation disclosed certain facts about an assault; he did not state the source of that information, however. Thus, the affidavit does not necessarily contradict Mr. Winston's allegation that the warrant was obtained only after the cell phone was found illegally. Nor has the Government rebutted Mr. Winston's argument that if the officers truly had not needed to find the cell phone in order to obtain the warrant, they would have waited for that warrant before conducting any search of the house.

In summary, the Government has not provided any evidence concerning trial counsel's decision not to file a motion to suppress. Thus, the Government has not rebutted Mr. Winston's evidence of his counsel's statements that the search had been warrantless, but that no motion was necessary because the defense would prevail at trial in light of the Government's weak case. Concerning the merits of a possible motion to suppress, Mr. Winston's own evidence, unrebutted, establishes at least an illegal entry

and search that yielded the cell phone, which could have led to the subsequent search warrant. The Government has not provided any evidence from the officers concerning the basis for the warrant or the circumstances of the discovery of the cell phone that could purge any taint from the alleged illegality. Given this lack of evidence, the court cannot conclusively determine at this time that Mr. Winston is not entitled to relief on this claim. *See* 28 U.S.C. § 2255(c).

Accordingly, the court will retain this claim under advisement pending an evidentiary hearing, to be set by further order of the court. The court will also appoint counsel to represent Mr. Winston with respect to this claim.

### III.     Claims Relating to Admission of Expert Testimony

Mr. Winston raises three claims relating to the admission of expert testimony by Government witness Chris Hopkins, a Kansas City, Kansas police officer. Based on his expertise and training with firearms, Officer Hopkins testified about the characteristics, operation, and uses of the three firearms found at Mr. Winston's house. At the time of the testimony, the court overruled the defense's relevance objection, ruling that the testimony was relevant to rebut anticipated testimony by Mr. Winston's girlfriend, Sarah DeWeese, who had claimed to own two of the guns. Indeed, Ms. DeWeese subsequently testified that she had never loaded one gun and that the other gun had the safety on, even though Officer Hopkins had testified that both guns were loaded when found and that neither gun had a safety mechanism.

Mr. Winston now claims that his counsel rendered ineffective assistance in failing to seek to exclude such expert testimony at trial and in failing to challenge the admission of the testimony on appeal. Mr. Winston also claims that the admission of the testimony constituted a violation of due process. The court denies these claims.

Mr. Winston first argues that the testimony should not have been admitted because the Government failed to give prior notice and a summary of that expert testimony under Fed. R. Crim. P. 16(a)(1)(G). The Government does not dispute that Officer Hopkins gave expert testimony at trial. As the Government points out, however, both Rule 16 and the court's pretrial discovery order required such disclosure only upon request by the defense, and no such request was made in this case. Accordingly, the Government was free to elicit the expert testimony without prior notice.[3]

Moreover, Mr. Winston has not established that the testimony should have been excluded. Mr. Winston seems primarily to complain that the Government did not formally offer Officer Hopkins's testimony as testimony falling within the scope of Fed. R. Civ. P. 702. Mr. Winston has not shown, however, that any such declaration is required at trial. During direct examination, the Government established that Officer

---

[3]Mr. Winston has not claimed that his counsel was ineffective in failing to make such a pretrial request under Rule 16(a)(1)(G). Even if asserted, however, such a claim would fail. Mr. Winston suggests that with prior notice, he would have been able to retain his own firearms expert. Mr. Winston has not indicated how his own expert would have testified, however, or how such an expert could have opposed the testimony of Officer Hopkins. Accordingly, Mr. Winston would not be able to establish under *Strickland* that the failure to make a pretrial request for disclosure of expert testimony constituted deficient representation or that he was prejudiced thereby.

8

Hopkins did in fact possess the necessary expertise, and, as noted above, the court found the testimony to be sufficiently relevant. There was simply no basis for exclusion of the testimony at trial—and no basis to believe that the Tenth Circuit would have reversed had the admission of the testimony been challenged on appeal.[4]

Accordingly, Mr. Winston has not established either the deficient performance or prejudice required to support his ineffective assistance claims under *Strickland*. Officer Hopkins's testimony did in fact prove relevant, as it cast doubt on the testimony subsequently given by Ms. DeWeese. In addition, Ms. DeWeese only claimed ownership of two of the three firearms found at the house, and the jury found that Mr. Winston violated the law with respect to all three firearms. Thus, even without Officer Hopkins's testimony rebutting Ms. DeWeese's claim of owning two guns, there is no reason to believe that the jury would not still have convicted Mr. Winston based on the third gun. For these reasons, the court denies Mr. Winston's claims of ineffective assistance of counsel based on the admission of the expert testimony.

The court also denies Mr. Winston's related due process claim. This claim was not raised before the trial court or on direct appeal, and Mr. Winston has not overcome that procedural default by showing actual prejudice or that a miscarriage of justice will

---

[4]Officer Hopkins did not, as Mr. Winston asserts, concede at trial that he was not a qualified expert; rather, he simply testified that he had not previously been qualified as an expert witness *in court*. There is no question, based on Officer Hopkins's testimony, that he possessed sufficient expertise to give the expert testimony that he gave at trial.

9

occur if the claim is not addressed, in light of the reasons set forth above. *See United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).[5]

Because the files and records of the case conclusively show that Mr. Winston is not entitled to relief, the court denies these claims relating to Officer Hopkins's expert testimony without an evidentiary hearing. *See* 28 U.S.C. § 2255(c).

### IV.  **Claims Relating to Presentence Investigation Report**

In his final two claims, Mr. Winston argues that the Presentence Investigation Report (PSIR) contains information that is inaccurate and unreliable. Specifically, Mr. Winston points to the portions of the PSIR setting forth the allegations of his sexual misconduct prior to the search that revealed the firearms in his house. Although Mr. Winston does not argue that his sentence was somehow affected by the inclusion of those allegations, he argues that their inclusion affects his treatment by prison officials and could possibly make him subject to civil commitment as a "sexually dangerous person" under 18 U.S.C. § 4248 after he completes his term of imprisonment. Mr. Winston argues that the inclusion of the information in the PSIR constitutes a violation of due process and that his counsel rendered constitutionally-deficient service in failing to

---

[5] Mr. Winston notes that the Government did not argue the procedural bar in its response brief. The court may apply the bar *sua sponte*, however. *See Cook*, 997 F.2d at 1320.

10

object to those portions of the PSIR. The court denies these claims.

First, Mr. Winston has not established that he may pursue these claims at this time in light of his admission that the inclusion of this information in the PSIR did not affect his conviction or sentence. Mr. Winston complains of mistreatment (or potential mistreatment) by prison officials and a possible civil action in the distant future, allegedly based on the PSIR information. There is no indication, however, that Mr. Winston has challenged any past mistreatment by proper method through the prison authorities, and this court is not prepared to attempt to remedy future harms that may or may not occur. Accordingly, this court cannot take up Mr. Winston's challenge to the contents of the PSIR at this time. *See United States v. Funt*, 896 F.2d 1288, 1300-01 (11th Cir. 1990) (refusing to address challenge to PSIR when sentence was not affected and defendant failed to use administrative process).

The court also denies these claims on their merits, on the basis that Mr. Winston cannot show that the inclusion of this information in the PSIR was improper or that the court would have excluded the information if asked at sentencing. Mr. Winston has not shown that the statements in the PSIR were inaccurate in any way. The court also disagrees that the information was mere "surplusage". The statement of the offense conduct in the PSIR properly included the circumstances that gave rise to the discovery of the firearms, including the allegations that brought the police to Mr. Winston's house. Moreover, Mr. Winston was convicted of the crime of contributing to a child's misconduct, in connection with furnishing the girl with marijuana on the date in

11

question; thus, the PSIR properly included the circumstances of that incident, including the girl's allegations that Mr. Winston had also assaulted her. The court also disagrees that the PSIR unfairly paints Mr. Winston as a sexual offender. The PSIR gives both sides of the story, detailing both the girl's and Mr. Winston's allegations, and it notes that Mr. Winston was acquitted in state court on the charges of kidnapping, attempted rape, and attempted aggravated criminal sodomy.

Accordingly, Mr. Winston has not established that the PSIR violated his right to due process. Nor has Mr. Winston established that his counsel acted unreasonably in failing to object to these portions of the PSIR, or that the court would have sustained any objection made by counsel. The files and records of the case conclusively show that Mr. Winston is not entitled to relief with respect to the PSIR; therefore, the court denies these claims without an evidentiary hearing. *See* 28 U.S.C. § 2255(c).

IT IS THEREFORE ORDERED BY THE COURT THAT the petition by Virgil Winston for relief pursuant to 28 U.S.C. § 2255 (Doc. # 51) is denied in part and retained under advisement in part. The court denies the petition with respect to Grounds 2 through 6 alleged in the petition. The court retains under advisement, pending an evidentiary hearing, the claim asserted in Ground 1 in the petition. By further orders, the court shall set the hearing and appoint counsel to represent Mr. Winston on that claim.

IT IS SO ORDERED.

Dated this 10th day of March, 2009, in Kansas City, Kansas.

                                                            s/ John W. Lungstrum
                                                            John W. Lungstrum
                                                            United States District Judge